IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRANDON ROBINSON, : 
 : 
        Petitioner, : 
 : 
v. :   Civ. Act. No. 17-52-LPS
 : 
DANA METZGER, Warden, and : 
ATTORNEY GENERAL OF THE : 
STATE OF DELAWARE, : 
 : 
        Respondents. : 

---

## MEMORANDUM OPINION

Brandon Robinson. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

March 16, 2020
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Brandon Robinson ("Petitioner"). (D.I. 1) The State filed an Answer in Opposition, and Petitioner filed a Reply. (D.I. 19; D.I. 24) For the reasons discussed, the Court will dismiss the Petition.

## II. BACKGROUND

The facts leading to Petitioner's arrest and conviction are set forth below:

> On September 14, 2010, at around 9:00 p.m., Glandton and his friend Johnson were standing at the corner of Elm and Van Buren Streets in Wilmington. An unidentified male acquaintance of Johnson approached them. While Glandton was on the phone with his cousin, he overheard the man ask Johnson if he could buy Percocet from him. Johnson agreed. As Johnson was taking the man's money, [Petitioner] and a man known as "RC"[1] approached the group. [Petitioner] walked up to Johnson and shot him from an arm's length distance. Glandton ran away. [Petitioner] then shot Glandton in the leg. Glandton fell into the street and watched the three men run away. Johnson died from his injuries. Glandton survived, but required surgery and was immobile for seven months.
>
> As first responders arrived, a crowd gathered around Glandton and Johnson. Officer Monet Cummings of the Wilmington Police Department asked Glandton who shot him. Glandton initially said he did not know. Glandton's initial statement was not in any of the officers' police reports.[2] He then shouted to an acquaintance in the crowd, "B[3] did this, your peoples did this." Officer Cummings also heard Glandton shout "they killed Cam and she shot him for some pills." Police arrested [Petitioner] and charged him with First Degree

---

[1] Glandton identified the man as a person he knew as "RC" after viewing pictures on Facebook. *See Robinson v. State*, 149 A.3d 518 (Table), 2016 WL 5957289, at *1 n.2 (Del. Oct. 13, 2016).

[2] Officer Cummings did not write her own report; her supervisor wrote it. *See Robinson*, 2016 WL 5957289, at *1 n.3.

[3] Glandton knew Petitioner as "Brandon" or "B." *See Robinson*, 2016 WL 5957289, at *1 n.4.

> Murder, Attempted First Degree Murder, and two counts of Possession of a Firearm during the Commission of a Felony.
>
> On the fifth day of trial, the prosecutor informed [Petitioner's] counsel and the Superior Court that a witness, Keisha Henry, provided her with new information on the way into court. Henry told the prosecutor that she and Glandton had spoken multiple times about the shooting through e-mail, text, and social media. She said that in those conversations, Glandton expressed uncertainty about who shot him. [Petitioner's] counsel examined Henry outside the presence of the jury. Henry testified that Glandton had told her that everything "happened so fast" and that the "word on the street" was that RC had shot him. Henry had previously told police that Glandton told her [Petitioner] had shot him. She could only produce one message from Glandton asking her to call him, and a photograph he sent her of RC as evidence of their conversations.

*Robinson*, 2016 WL 5957289, at *1-2.

On September 22, 2011, a Delaware Superior Court jury found Petitioner guilty of first degree murder and possession of a firearm during the commission of a felony ("PFDCF"), but acquitted him of attempted first degree murder and its related PFDCF charge. *See Robinson v. State*, 65 A.3d 617 (Table), 2013 WL 1944197, at *1 (Del. May 10, 2013). In June, 2012, the Superior Court sentenced Petitioner to life in prison for the first degree murder conviction and to eight years at Level V for the PFDCF conviction. *Id.*; D.I. 19 at 2. Petitioner appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentences on May 10, 2013. *See Robinson*, 2013 WL 1944197, at *3.

In October, 2013, Petitioner filed a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 19 at 2) On November 24, 2015, a Superior Court Commissioner issued a Report and Recommendation that the Rule 61 motion should be denied without an evidentiary hearing. (*Id.*) The Superior Court adopted the Report and Recommendation and denied the Rule 61 motion on February 25, 2016. (*Id.*) Petitioner appealed,

and the Delaware Supreme Court affirmed the Superior Court's judgment on October 13, 2016. *See Robinson v. State*, 149 A.3d 518 (Table), 2016 WL 5957289, at *4 (Del. Oct. 13, 2016).

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

3

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). In

4

order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies both to explicit and implicit findings of fact, and is only rebutted by clear and

5

convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner timely filed the § 2254 Petition pending before the Court, which asserts the following three grounds for relief: (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) with respect to its handling of three of Glandton's statements; (2) defense counsel provided ineffective assistance; and (3) Petitioner's due process right to a fair trial was violated as a result of cumulative errors.

### A. Claim One: *Brady* Violation

In Claim One, Petitioner contends that the State violated *Brady* by failing to provide the following discovery prior to trial: (1) the two statements Glandton made in front of Officer Cummings ("Glandton/Cummings statements");[4] and (2) Glandton's statement to the witness Henry indicating he was unsure who shot him ("Glandton/Henry statement"). The Superior Court denied this Claim as procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3) because Petitioner did not raise the argument during trial or on direct appeal, and Petitioner did not demonstrate that defense counsel's failure to raise the alleged *Brady* violations triggered Rule

---

[4]The two Glandton/Cummings statements consisted of: (1) Officer Cummings' testimony "that she heard Glandton shout 'they killed Cam and she shot him for some pills;'" and (2) Officer Cummings' testimony that Glandton responded he did not know who shot him when she first asked him. *Robinson*, 2016 WL 5957289, at *3.

6

61(i)(5)'s miscarriage of justice exception for the default.[5] (D.I. 23-7 at 33-36) The Delaware Supreme Court affirmed that decision. *See Robinson*, 2016 WL 5957289, at *2.

### 1. Procedural default

When the Delaware Supreme Court reviewed the Superior Court's denial of Claim One, it noted that, in Delaware, "viable *Brady* claims fall within [Rule 61(i)(5)'s] miscarriage of justice exception [to procedural default under Rule 61(i)(3)]," and concluded that Rule 61(i)(5)'s exception did not apply to Petitioner's situation. *Robinson*, 2016 WL 5957289, at *3. To the extent the Delaware Supreme Court's consideration as to whether Petitioner could satisfy Rule 61(i)(5)'s miscarriage of justice exception did not constitute an adjudication of Claim One on the merits for the purposes of § 2254(d)(1),[6] the Court defers to the Delaware Supreme Court's final holding that Claim One was procedurally defaulted under Rule 61(i)(3). By denying Claim One as barred by Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law. This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F.Supp.2d 283, 296 (D. Del.2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D.

---

[5]The version of Rule 61(i)(5) in effect when Petitioner filed his original Rule 61 motion in 2013 stated:

> The bars to relief in paragraphs (1), (2) and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

Del. Super. Ct. Crim. R. 61(i)(5) (repealed 2014).

[6]Below, the Court also discusses the conclusion it would reach if the Delaware Supreme Court's discussion of Ruel 61(i)(5)'s miscarriage of justice exception should be treated as an adjudication on the merits.

7

Del. Oct. 11, 2005). Given these circumstances, Claim One is procedurally defaulted, meaning that the Court cannot review the merits of the Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Liberally construing the Petition, Petitioner appears to assert two causes for the procedural default of his *Brady* Claim: (1) appellate counsel was unable to present the *Brady* Claim on appeal because defense counsel did not provide appellate counsel with Petitioner's complete case file (D.I. 1 at 10; D.I. 10 at 3; D.I. 24 at 12); and (2) defense counsel knew about the *Brady* argument but failed to inform appellate counsel about the issue (D.I. 24 at 12-13). Petitioner never presented these ineffective assistance of counsel allegations in his state collateral proceeding or in his subsequent post-conviction appeal in a manner that provided the Delaware state courts an opportunity to address the assertions on their merits. Additionally, contrary to Petitioner's contention (D.I. 24 at 12), the fact that post-conviction counsel requested an evidentiary hearing to develop the facts underlying the arguments in Petitioner's Rule 61 motion (D.I. 23-13 at 22-23) does not constitute a presentation of the instant ineffective assistance of counsel allegations for exhaustion purposes. Consequently, these ineffective assistance of counsel allegations are themselves procedurally defaulted,[7] and cannot excuse Petitioner's procedural default of Claim One. *See Edwards*, 529 U.S. at 453-54.

In the absence of cause, the Court does not need to address prejudice. However, Petitioner cannot demonstrate that he was prejudiced by the procedural default of Claim One because he cannot satisfy the more stringent *Brady* standard for prejudice. For instance, the Delaware Supreme Court reviewed the circumstances surrounding the Glandton/Henry statement and determined that

---

[7]*See* Del. Super. Ct. Crim. Rule 61(i)(2). The ineffective assistance of counsel claims Petitioner presented in his Rule 61proceeding did not allege these particular errors.

8

there was no *Brady* violation because the State disclosed the nature of Glandton's statement to witness Henry when it received notice of that statement. *See Robinson*, 2016 WL 5957289, at *3. Petitioner has not provided any reason for the Court to question this conclusion.

As for the two Glandton/Cummings' statements, the Delaware Supreme Court determined that Officer Cummings' testimony that she heard Glandton shout "**she** shot him for some pills" was not *Brady* material because the reference to "**she**" was a typographical error. With respect to the other Glandton/Cummings' statement, namely, Officer Cummings' testimony that Glandton initially stated he did not know who shot him, the Delaware Supreme Court determined that the statement constituted a delayed disclosure of *Brady* material, not a suppression of *Brady* material. *See Robinson*, 2016 WL 5957289, at *3. The Delaware Supreme Court then held that the delayed disclosure of Glandton's statement to Cummings did not warrant reversal under *Brady* because defense counsel thoroughly and effectively cross-examined Cummings and Glandton about the statement. *Id.*

Finally, the miscarriage of justice exception to AEDPA's procedural default doctrine does not excuse Petitioner's procedural default, because he has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim One as procedurally barred from federal habeas review.

### 2. Merits

Nevertheless, the Court acknowledges the possibility that it should view the Delaware Supreme Court's determination regarding Petitioner's failure to meet Rule 61(i)(5)'s miscarriage of justice standard with respect to his *Brady* arguments as constituting an adjudication of Claim One's merits. *See, e.g., Jermyn v. Horn*, 266 F.3d 257, 280 n. 8 (3d Cir.2001) ("Therefore, we conclude that where, in the course of its analysis, the Pennsylvania Supreme Court actually considered whether the claims raised in Jermyn's second PCRA petition met the procedural 'miscarriage of justice' standard,

9

we are presented with the type of situation in which Congress intended us to review the state court's resolution of those issues with the appropriate level of deference due under AEDPA's 2254(d)."). As such, the Court will exercise prudence and alternatively review Claim One under the deferential standard contained in § 2254(d)(1). Under this alternative analysis, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's denial of the instant *Brady* argument was contrary to, or involved an unreasonable application of, clearly established federal law.

Pursuant to *Brady v. Maryland*, "[p]rosecutors have an affirmative duty 'to disclose [*Brady*] evidence . . . even though there has been no request [for the evidence] by the accused,' which may include evidence known only to police." *Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 284 (3d Cir. 2016). The *Brady* rule applies to favorable and material evidence affecting the jury's judgment of a crucial prosecution witness' credibility. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). In order to prevail on a *Brady v. Maryland* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). Exculpatory evidence is material if the "evidence could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

The Delaware Supreme Court denied Claim One on post-conviction appeal after identifying and correctly articulating the *Brady* standard, and determining that: (1) the Glandton/Henry statement did not constitute *Brady* material; (2) the Glandton/Cummings' statement that "**she** shot him for pills" was not *Brady* material because the reference to the word "she" was only a typographical error; and (3) at most, the Glandton/Cummings' statement that Glandton initially

stated he did not know who shot him only constituted a non-prejudicial delayed disclosure of *Brady* material. For the following reasons, the Court concludes that the Delaware Supreme Court reasonably applied *Brady* in reaching all three determinations.

To begin, Petitioner has not provided any clear and convincing evidence rebutting the Delaware Supreme Court's conclusion that none of the three statements amounted to *Brady* material. However, even if the delayed disclosure of the Glandton's statement to Officer Cummings that he did not know who shot him should be viewed as *Brady* evidence, Petitioner has not shown a reasonable probability of a different result had the statement been disclosed earlier. The record reveals that Defense counsel thoroughly cross-examined Cummings about the statement. Defense counsel also effectively cross-examined Glandton about the statement, and elicited Glandton's testimony that he did not see the person who shot him and that there was a possibility that RC pulled out a gun. The absence of prejudice from the delayed disclosure is further illustrated by the fact that the jury acquitted Petitioner of attempted first degree murder and the related weapons offense. Given these circumstances, the Court concludes that the Delaware Supreme Court's denial of Claim One was neither contrary to, nor an unreasonable application of, clearly established Federal law.

### B. Claim Two: Ineffective Assistance of Counsel

In Claim Two, Petitioner contends that defense counsel provided ineffective assistance by failing to seek a mistrial due to the State's alleged multiple *Brady* violations. The Delaware Supreme Court denied the Claim as meritless during Petitioner's post-conviction appeal. Therefore, Claim Two will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

11

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 698.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Here, the Delaware

Supreme Court's decision was not contrary to *Strickland*; it correctly identified the *Strickland* standard applicable to Claim Two. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel Claims through a "doubly deferential" lens.[8] *See Richter*, 562 U.S. at 105. The relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* When viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

The Delaware Supreme Court provided the following reason for denying Claim Two:

---

[8]As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

562 U.S. at 105 (internal citations omitted).

13

> Counsel could not be ineffective for failing to move for a mistrial if the State did not violate *Brady*. Further, trial counsel made a strategic decision not to request a mistrial. In trial counsel's Rule 61 affidavit, counsel explained that he did not feel the need to request a mistrial when he heard Officer Cummings' testimony because he was able to use that evidence effectively. [Petitioner] also cannot establish prejudice from the alleged violation.

*Robinson*, 2016 WL 5957289, at *4. As previously explained, the Court has concluded that the State did not violate *Brady* in the manner suggested by Petitioner. Since an attorney does not provide ineffective assistance by failing to raise meritless objections or arguments,[9] defense counsel's failure to move for a mistrial based upon non-existent *Brady* violations did not amount to constitutionally ineffective assistance.

In addition, it is well-settled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. As a general rule, deciding whether to move for a mistrial is considered a strategic decision left to counsel. *See Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008) (findng it "oft-recognized" that decision not to seek mistrial is frequently strategic); *United States v. Moran*, 393 F.3d 1, 10 (1st Cir. 2004); *United States v. Washington*, 198 F.3d 721, 723 (8th Cir. 1999). The transcript of defense counsel's cross-examination of Officer Cummings in conjunction with defense counsel's Rule 61 affidavit support the Delaware Supreme Court's conclusion that defense counsel made a reasonable strategic decision not to move for a mistrial. For instance, in his Rule 61 affidavit, defense counsel explained how he viewed the delayed disclosure of Glandton's statement "as a bit of a windfall," and he did not feel "he needed additional time to explore the circumstances surrounding the giving of this statement [because he] had already done a fairly comprehensive pre-trial investigation with respect to Glandton's statements." (D.I. 23-14 at 32) Defense counsel noted that he was unable to establish

---

[9] *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

that the State's actions in not providing the material were "intentional" and, short of that, counsel did not feel that a mistrial motion was appropriate, since the information was in fact provided. (D.I. 23-14 at 33) However, defense counsel also explained that his cross-examination of Officer Cummings revealed that "Glandton had indicated at the time of the shooting that he did not know who shot him," and he utilized this fact "in [his] closing arguments to the jury." (D.I. 23-14 at 31-32) The transcript supports these assertions. Additionally, the transcript reveals that defense counsel moved for a mistrial on two other occasions during Petitioner's trial. (D.I. 23-14 at 10, 26) Those two independent mistrial requests demonstrate that defense counsel knew how to evaluate a situation and determine whether to move for a mistrial. Similarly, defense counsel's Rule 61 affidavit demonstrates that he reasonably determined that there was no ground to move for a mistrial on the basis of the State's delayed disclosure of Glandton's statement to Officer Cummings.

For all of these reasons, the Court concludes that Petitioner has failed to make the requisite showing of deficient performance with respect to Claim Two. Petitioner also cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for defense counsel's failure to move for a mistrial, especially since his *Brady* arguments are meritless. Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

### C. Claim Three: Cumulative Error

In his final Claim, Petitioner asserts that cumulative errors compromised his right to a fair trial and deprived him of due process. Petitioner identifies these errors as the State's alleged *Brady* violations and the alleged ineffectiveness of his defense counsel. Petitioner presented the same "cumulative error" argument to the Delaware Supreme Court on post-conviction appeal, which denied the argument as meritless. Therefore, Claim Three will only warrant habeas relief if the

Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The United States Supreme Court has not recognized the concept of cumulative error. *See Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019). Since there is no clearly established Federal law with respect to a cumulative error argument, it would appear that the Court's § 2254(d) analysis is over and Petitioner is not entitled to habeas relief for Claim Three.

The Third Circuit has recognized the cumulative error doctrine on habeas review, holding that "a cumulative error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default." *Collins v. Sec'y of Pa. Dep't of Corr.* 742 F.3d 528, 542 (3d Cir. 2014). Pursuant to the cumulative error doctrine,

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir.2008). Given the Third Circuit's recognition of the cumulative error doctrine in habeas proceedings, the Court will exercise prudence and review Claim Three.

Here, the Delaware Supreme Court reviewed and rejected each alleged underlying error on its merits, and also rejected Petitioner's cumulative error argument because his "underlying claims are without merit or did not prejudice him." *Robinson*, 2016 WL 5957289, at *4. As previously discussed, this Court has also concluded that Claims One and Two lack merit and did not cause any

prejudice. Since Petitioner has not provided anything to demonstrate "actual prejudice" even when the two Claims are considered together, the Court will deny Claim Three as meritless.

## V. PENDING MOTION

Petitioner filed a document entitled "Motion to Amend Habeas Corpus" approximately 21 months after he filed a Reply to the State's Answer. (D.I. 25) The substance of the Motion demonstrates that it is actually a Motion to Supplement his Reply (D.I. 24) rather than a Motion to Amend his original Petition. So construed, the Court will grant the Motion to Supplement, and notes that it has considered Petitioner's supplemental Reply along with his original Reply to the State's Answer during its review of his Petition.

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VII. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.